**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **MARIO QUIROS and ALESSANDRA ALARCÓN, on their own behalf and in representation of their minor son M.I.Q.**<br><br>Plaintiffs<br><br>vs.<br><br>**DBR HOTEL OWNER, LLC; DBR DORADO OWNER, LLC; CHUBB INSURANCE COMPANY; COMPANIES A-Z; JOHN DOE; PATTY POE**<br><br>Defendants | CIVIL NO.<br><br>PLAINTIFFS REQUEST JURY TRIAL<br><br>PLAINTIFFS REQUEST PUNITIVE DAMAGES UNDER ARTICLE 1538 OF THE CIVIL CODE OF PUERTO RICO OF 2020. |

**COMPLAINT**

**TO THE HONORABLE COURT:**

**COME NOW** Plaintiffs, through the undersigned legal representation, and very respectfully STATE, REQUEST AND PRAY:

**JURISDICTIONAL ALLEGATIONS**

1. This Honorable Court is vested with jurisdiction over the parties and the subject matter of this litigation under and pursuant to the diversity of citizenship statute (Section 1332 c) of Title 28 of the United States Code, 28 U.S.C. §1332), inasmuch as there is complete diversity of citizenship between the Plaintiffs, as residents of the State of California and the defendants, residents of the Commonwealth of Puerto Rico, and the amount in controversy, exclusive of costs and interest, exceeds the amount of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00). As more specifically alleged below, all Defendants are domiciled and permanent citizens of Puerto Rico within the meaning of

28 U.S.C. §1332 and all Plaintiffs are domiciled and permanent citizens of a state of the United States of America other than Puerto Rico.

2. Venue is proper in this Court pursuant to Section 1391 of Title 28 of the United States Code, 28 U.S.C. §1391, because the claims asserted arose in this judicial district.

3. Plaintiffs demand a jury trial.

4. Plaintiffs demand punitive damages pursuant to Article 1538 of the Civil Code of Puerto Rico of 2020. Punitive damages of a sum equal to the amount of the compensatory damages must be imposed upon Co-defendants as their actions and/or inactions of overtly gross negligence with wanton disregard to human life and safety are so grave that they put co-Plaintiffs lives and safety at risk.

5. All Co-defendants are jointly and severally responsible to Plaintiffs for the damages suffered by them.

**THE PARTIES**

6. Co-Plaintiffs MARIO IGNACIO QUIROS (hereinafter "MARIO IGNACIO") is of legal age, a resident of and domiciled in California, a doctor in medicine with a specialty in emergency medicine, married to coplaintiff ALESSANDRA ALARCÓN (hereinafter "ALESSANDRA"), and the father of minor coplaintiff M.I.Q.

7. Coplaintiff ALESSANDRA ALARCÓN (hereinafter "ALESSANDRA"), is of legal age, an executive, a resident of and domiciled in California, and married to coplaintiff MARIO IGNACIO and mother of minor coplaintiff M. I. Q.

8. Minor coplaintiff M.I.Q. is the son of Alessandra and Mario Ignacio, who lives with them in California. M.I.Q was born on April 20, 2016. At the time the facts of this case took place, M.I.Q. was 4 years old.

9. Co-defendants D.B.R. HOTEL OWNER, LLC and D.B.R. DORADO OWNER, LLC are Puerto Rico corporations that planned, designed, built, own and maintain, in whole or in part the premises, structures, roads and land property of a hotel property named "Dorado Beach, a Ritz-Carlton Reserve" (hereinafter "hotel") located in Dorado, Puerto Rico. The hotel is a for-profit business that in-keeps its guests and provides amenities and services to its guests.

10. Co-defendants CHUBB INSURANCE COMPANY is an insurance company that had issued insurance policies on behalf of Co-defendants which were in full force and effect at the times subject of this case and cover the damages suffered by Plaintiffs.

11. COMPANIES A-Z are legal entities that at the times relevant to these facts owned, operated, managed, and/or administered, in whole or in part the hotel Dorado Beach, a Ritz-Carlton Reserve. and/or were responsible for maintaining the location where the events alleged in the complaint took place. In the alternative, they are other legal entities that caused or contributed to causing the damages to Plaintiffs which are yet to be identified. Also, and in the alternative, they are insurance companies which at the time the facts of this case took place had in full force and effect insurance policies in favor of Co-defendants.

12. CO-DEFENDANTS JOHN DOE and PATTY POE are all Co-defendants of unknown identity that caused and/or contributed to causing Plaintiffs damages as they

may have been the drivers and/or owners of the golf cart. Their identities will be revealed once they are known through discovery.

13. All of the named defendants are jointly and severally responsible to Plaintiffs for the damages caused to them. All defendants fictitiously named herein, will be correctly named once their identities are determined.

**THE RELEVANT FACTS**

14. On March 3, 2021, all Plaintiffs were staying in room 917 at the hotel with Mario Ignacio and Alessandra's minor daughter, who is M.I.Q.'s sister.

15. The day before, Mario Ignacio and M.I.Q. has walked along one of the trails adjacent to their room. On that date, Mario Ignacio rented two bicycles from the hotel and took his son M.I.Q. and his daughter for a bike ride down that same trail adjacent to their room. Mario Ignacio and M.I.Q. were each riding their own bicycles and Mario Ignacio had her daughter on bicycle baby trailer attached to the back of his bicycle. Both sides of the trail were full of tall and thick vegetation and big rocks. At the trail's intersection with Rockefeller Nature Trial, there were no warning signs, stop signs, yield signs, speed bumps, traffic signals, or security measures of any kind.

16. Coplaintiff M.I.Q. was riding just in front of his father. While going downhill on the trail, as they arrived at the intersection with Rockefeller Nature Trail, a golf cart rushed towards them at full speed from their left side. The vegetation was so tall and thick that their view was blocked, and they could not have seen the golf cart coming at them.



17. The golf cart driver tried to stop the cart, but they were too close to coplaintiff M.I.Q. Upon attempting avoid the golf cart from impacting him, M.I.Q. fell on the pavement right in front of the golf cart's front wheel, which dragged M.I.Q.'s left arm over the pavement until the golf cart came to a stop. Mario Ignacio immediately pulled M.I.Q. from under the golf cart and started to give M.I.Q. first aid. Both M.I.Q and his sister were screaming at the top of their lungs.

18. Someone from the hotel reached the accident site and asked Mario Ignacio if he needed medical assistance. As an emergency medicine physician Mario Ignacio took M.I.Q. to his room to provide medical assistance. Mario Ignacio assessed M.I.Q's injuries, which were skin burns but no fractures. Mario Ignacio took him back to his hotel room and immediately washed his wounds with soap and water.

19. The hotel personnel talked to the golf cart drivers, and both Mario Ignacio, M.I.Q and his daughter and the golf cart drivers left about the same time. Before they left

the accident scene Mario Ignacio asked the hotel staff at the scene to bring him first aid supplies which they did.

20. About 30 minutes later someone from the hotel came to their room and had Mario Ignacio fill out an incident report. Mario Ignacio used gauze and some bandages they provided to initially dress the wound. That afternoon he went to a pharmacy and purchased more wound dressings for the subsequent days. Mario Ignacio's brother-in-law in Puerto Rico was able to get me Xeroform gauze to dress his burn wounds daily.

21. The day after the accident, people from the hotel's loss prevention department came to their room with other persons dressed in Captain America and Spiderman outfits to cheer M.I.Q. They did not speak to Plaintiffs about the accident.

22. As a result of the accident, coplaintiff M.I.Q. suffered second- and third-degree pavement friction burns in his left arm, hand and fingers that has required and will continue to require many painful and costly surgical procedures, emotional anguish, and physical pain.



**FIRST CAUSE OF ACTION: HOTEL LIABILITY**

23. Plaintiffs repeat and incorporate by reference each and every preceding allegation, as if fully set herein. Co-defendants are jointly and severally responsible for all the damages caused to Plaintiffs and deviated from the standard and duty of care that required that they provide their invitees or guests the level of security that they are required. Codefendant's negligence was the only cause of Plaintiffs' damages.

24. Co-defendants owed Plaintiffs the duty of care that an innkeeper owes his guests. Hotels have a heightened duty of care and protection on innkeepers to maintain its property and trails and roads in such a safe condition that one who is induced to enter the premises will not suffer any damage. Co-defendants failed to keep their property, roadways, and trails in a reasonably safe condition.

25. All Co-defendants are jointly and severally liable to Plaintiffs as the hotel did not take basic precautionary measures of a prudent and reasonable person to avoid or remedy the foreseeable risk the condition created, as they knew of should or should have known of the dangerous conditions. Co-defendants failed to ensure that the areas to which guests have access were safe. Co-defendants failed to comply with their obligation to anticipate and take measures against a dander that was reasonably foreseeable.

26. Co-defendants were grossly negligent as the hotel's trails were planned, built, and maintained in such a way that created dangerous hazards to Plaintiffs. There was complete absence of any warning signs, road signs, stop signs, speed bumps, traffic signals or any other security measure at the intersection to alert Plaintiffs or the golf cart

drivers of the upcoming intersection between the downhill trail and the Rockefeller Nature Trail.

27. Co-defendants were grossly negligent in allowing bicycles and golf carts to travel on the same trails and not having separate bicycle lanes and golf cart lanes.

28. Co-defendants were grossly negligent in designing and keeping the trail with very high and thick vegetation that impeded Plaintiffs' ability to see the golf cart coming towards them with enough time to stop.

29. Co-defendants were grossly negligent in failing to warn a right of way to either the golf cart or the bicycles.

30. Co-defendants were grossly negligent in failing to repair or remedy such dangerous conditions and failing to take affirmative steps to protect guests from known or reasonably discoverable conditions. By information and belief, other accidents have occurred at the hotel due to Co-defendants' failure to design and maintain the trails in a safe manner, without Co-defendants taking any affirmative actions to fix the dangerous conditions and warn its guests of dangers.

31. The drivers and owners of the golf cart that was driven in a negligent manner at a high speed in an area with limited or no visibility. Furthermore, this unknown person left the area after causing the damaged sustained by Plaintiffs.

**SECOND CAUSE OF ACTION: PHYSICAL AND EMOTIONAL DAMAGES**

32. The proximate and sole cause of Plaintiffs' damages was the gross negligence of Co-defendants. As a direct consequence of defendants' gross negligence, M.I.Q. received second- and third-degree friction burns to his left arm hand and fingers, comprising 3% of his total body surface.

33. A second- and third-degree friction skin burn is a major injury that is one of the most painful injuries due to the fact that nerve endings become exposed due to the lack of skin.

34. Upon their return to California, M.I.Q. approximately on March 7th, Mario Ignacio took M.I.Q. to the Grossman Burn Center at the West Hills Hospital and Medical Center. In order to treat tissue isquemia and improve healing, M.I.Q. had to receive approximately eighteen (18) treatment sessions in a hyperbaric chamber lasting 3 hours each session.



35. M.I.Q. was taken to surgery under general anesthesia on March 11, 2021, for staged surgical excision, high-speed dermabrasion down the deep dermal tissue and applications of human cadaveric skin allograft to the left upper extremity, hand, and fingers. He recovered in the hospital.

36. Coplaintiff M.I.Q. had to wear large bulky bandages and gauze for the first 3 weeks after the procedure. During this time Mario Ignacio and Alessandra had to change M.I.Q. dressings daily. Each change of dressing is physically and emotionally painful. Mario Ignacio and Alessandra had to dress the wounds with special silicone bandages for a few weeks until he received a special arm sleeve. He has been wearing that arm sleeve for 22 hours per day ever since he received it. He also has to wear a special steroid tape over his scar every night. This tape costs over $800 per roll and is not covered by insurance so it has been paid by Plaintiffs. The doctors had hope that M.I.Q. would need this treatment for only 2 or 3 months but the scar has not healed as the doctor had hoped so he has to continue wearing them. M.I.Q. does not like the sleeve as it is very uncomfortable and makes him very self-conscious about the injury.



37. M.I.Q returned to surgery under general anesthesia on March 15, 2021, for debridement down to the deep dermal tissue and application of autograft. The surgeon had to remove skin from the left side of M.I.Q.'s head and graft it to the left arm for healing.



38. Coplaintiff M.I.Q had 2 surgeries and spent 9 days in the hospital. In addition, he spent 54 hours in a hyperbaric chamber. He also had a separate procedure the first week of September where he had to undergo general anesthesia and receive steroid injections in his left hand due to excessive scarring that is threatening the mobility of his hand. M.I.Q. had and will continue to be subjected to many extremely painful and

dangerous medical procedures and he has received and will continue to receive very strong medications for pain.

39. Coplaintiff M.I.Q. has and will continue to suffer grave physical and emotional damages due to Co-defendant's negligence. It is expected that medical procedures and care will continue during M.I.Q.'s life. This five-year-old boy has been emotionally and physically traumatized for life. He has been physically and psychologically mutilated. For his entire life M.I.Q. will be embarrassed to have to show the world his scarred left arm. At this point in time, it is not yet known if M.I.Q. will suffer any significant physical functional impairment due to his injuries. M.I.Q.'s damages are valued in a sum of no less than five million dollars ($5,000,000.00).

40. Alessandra and Mario Ignacio have had to attend to M.I.Q.'s medical hospitalizations, treatments and doctor's appointments. Their day-to-day family routine has been forever disrupted due to Co-defendants gross negligence. They have lost their normal life and due to codefendant's negligence, are caught inside a never-ending cycle of physician offices, medical tests, and medications for M.I.Q.

41. Both Mario Ignacio and Alessandra have been emotionally devastated and feel powerless upon M.I.Q.'s injuries and know that their son's injuries may not get better, his hand may lose mobility and that most probably he will require more very painful treatments and surgical procedures for a long time. They are very worried about the psychological impact the accident and his injuries will continue to have in M.I.Q.'s development. Undoubtedly, they are also suffering grave emotional damages that are worth no less than five million dollars ($5,000,000.00) each.

**THIRD CAUSE OF ACTION: MEDICAL EXPENSES**

41. As a result of Co-defendants' gross negligence, Plaintiffs have incurred in no less than ten thousand dollars ($10,000.00) of out-of-pocket medical expenses, amounts which will continue to increase. Also, CIGNA medical insurance has paid no less than four hundred fifty thousand dollars ($450,000.00) in specialized medical treatment and procedures, which will continue to increase. CIGNA has already alerted Plaintiffs that if the injury was caused by a vehicle accident or on a commercial property, CIGNA may not be responsible for said expenses, for which reason CIGNA could claim reimbursement of said amounts of money paid. In said case, Co-defendants will be jointly responsible for said reimbursement.

**FOURTH CASUE OF ACTION: PUNITIVE DAMAGES UNDER ARTICLE 1538 OF THE CIVIL CODE OF PUERTO RICO OF 2020.**

42. Punitive damages of a sum equal to the amount of the compensatory damages must be imposed upon Co-defendants as their actions and/or inactions of overtly gross negligence with wanton disregard to human life and safety are so grave that they put co-Plaintiffs lives and safety at risk.

43. Co-defendants failed to follow the most basic safety rules and failed to alert its guests of a clear and imminent danger on the road inside the hotel. Upon information and belief, other accidents similar to this one have happened, but Co-defendants have failed to remediate the dangerous conditions that their guests are exposed to. Said negligence was so egregious that it mandates the imposition of punitive damages.

**WHEREFORE**, it is respectfully requested from this Honorable Court to grant all allegations in this complaint for Plaintiffs and against Co-defendants with the imposition of costs, punitive damages, interest, and a reasonable amount of attorney's fees.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 18th day of November, 2021.

**S/Pedro F. Soler Muñiz**
**PEDRO F. SOLER-MUÑIZ**
**USDC-PR NO. 212,909**
*Counsel for Plaintiffs*
Pedro F. Soler Muñiz
1357 Ashford Ave.
PMB 106
San Juan, PR 00907
Tel. 787-774-6522; Fax. 787-706-8680
psoler@pedrosolerlaw.com

**S/Alejandro J. Fernandez Muzaurieta**
**ALEJANDRO J. FERNANDEZ MUZAURIETA**
**USDC-PR 223706**
*Counsel for Plaintiff*
Alejandro J. Fernandez Muzaurieta
PO BOX 16264
San Juan, PR 00908
Tel. 939-337-4740
alejandrofernandezz@yahoo.com

**S/Alejandra C. Martínez Méndez**
**ALEJANDRA C. MARTINEZ MENDEZ**
**USDC/PR NO. 303111**
*Counsel for Plaintiffs*
Pedro F. Soler Muñiz
1357 Ashford Ave.
PMB 106
San Juan, PR 00907
Tel. 787-774-6522; Fax 787-706-8680
amartinez@pedrosolerlaw.com